WELCH,Judge.
The appellant, Tami Lynn Hinkle, was indicted for . 39 counts of theft of property—3.3 counts of theft in the first degree and 6 counts of theft in the second degree, Hinkle pleaded guilty to 17 counts of theft of property in the first degree and to 3 counts of theft of property in the second degree for her theft of over $500,000, from the law firm where she was a secretary. She was sentenced to 10 years’ imprisonment for 11 counts: Counts IV, VI, VIII, X, XII, XVI, XVIII, XXIV, XXVI, XXVIII, and XXX; and to 3 years’ imprisonment for 9 counts: Counts I, XIV, XX, XXII, XXXII, XXXIV, XXXVI, XXXVIII, and XXXIX of the indictment. The circuit court also ordered that all of Hinkle’s sentences be served consecutively and that Hinkle pay $350,000 in restitution.[1]
Initially, we note that the record does not contain any formal adjudication of guilt on the 20 charges. However, this Court has jurisdiction over Hinkle’s appeal based on the Alabama Supreme Court’s opinion in Ex parte Eason, 929 So.2d 992 (Ala.2005).
Eason contended on appeal that the appellate court did not have jurisdiction over his appeal absent a formal adjudication of guilt. Ex parte Eason addressed the meaning of “adjudication” as follows:
“Although the Alabama Rules of Criminal Procedure'do not undertake to define ‘adjudication,’ we may consider, by analogy, Rule 58(b), Ala. R. Civ. P:, which provides: ‘A judgment or order, or the minute entry thereof, need not be phrased in formal language nor bear particular words of adjudication. The judgement or order, or the minute entry thereof, will be sufficient if it .. .• indicates, an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication.’ (Emphasis supplied.)”
929 So.2d at 995.
The Alabama Supreme Court held that “[t]he trial court’s determination of guilt and the entry of the sentence adequately establishes that the trial court adjudicated Eason guilty and that the conviction and sentence were ripe for appeal.” Ex parte Eason, 929 So.2d 995-96 (emphasis added). The Court further held that, where the record as a whole discloses a determination of guilt and the entry of the sentence, there is an “implicit adjudication” of guilt.
Later, in Ex parte Walker, 152 So.3d 1247, 1252 (Ala.2014), the Alabama Supreme Court called into, question what was meant by the term, “pronouncement of a sentence,” but that Court again stated that, “[wjhen both a determination of guilt and a sentence are evident from the record, a judgment of conviction is set forth, and a defendant’s case is ripe for appeal.” Ex parte Walker, 152 So.3d at 1252. Ex parte Walker did not overrule Ex parte Eason, either explicitly or implicitly.
The Alabama Supreme Court then released Ex parte Kelley, [Ms. 1131451, No *805 vember 6, 2015] — So. 3d-(Ala.2015), clarifying what was meant by “entry of sentence.” Kelley was tried by a jury for two counts of capital murder and one count of sexual torture. The jury convicted Kelley of all three counts, and at the sentencing hearing the trial court adjudicated Kelley guilty of both counts of capital murder and sentenced him to, death. The trial court did not state on the record that Kelley was found guilty of ■ sexual torture and did not sentence Kelley on the record for that offense. However, the trial court’s written sentencing order stated that Kelley was being sentenced to life in prison for his sexual-torture conviction.
Kelley argued to the Alabama Supreme Court that this Court had not had jurisdiction to affirm his sexual-torture conviction. He argued that “no judgment of conviction was entered on the sexual-torture conviction because ... the trial court did' not pronounce a sentence on that conviction.” Ex parte Kelley, — So. 3d at-. The Kelley Court rejected the State’s argument that Ex parte Eason stood for the proposition that the trial court’s failure to pronounce sentence on the sexual-torture conviction was “merely a procedural defect” that did not interfere with the appellate court’s jurisdiction. The Kelley Court stated:
“Ex parte Eason is distinguishable from the present case. In Ex parte Eason, the trial court had sentenced the defendant to five years’ imprisonment following a guilty plea, but it did not formally pronounce the defendant’s guilt or enter a judgment of guilt. 929 So.2d at 992. This Court held that the trial court’s entiy of a sentence ‘adequately established that'the trial court adjudicated [the defendant] guilty and that the conviction and sentence were ripe for appeal.’ 929,So.2d at 996. In so doing, this Court recognized the proposition that ‘a judgment by the [trial] court imposing, sentence in accordance with a guilty verdict or a guilty plea sufficiently implies- the judgment of guilt-and serves as a judgment of conviction that will support an appeal.’ 929 So.2d at 995.
“Thus, in- Ex parte Eason, this Court held that a judgment of conviction is entered when the trial court enters a sentence that is consistent with a determination of guilt, even though that determination of guilt is not explicitly set out in the record. In the présent case, however, the trial court failed to pronounce a sentence on Kelley’s' sexual-torture conviction.”
Ex parte Kelley, — So. 3d at —.
Thus, in Ex parte Kelley, the Alabama Supreme Court made clear that1 imposing a sentence required an oral pronouncement 'and, thus, that a written sentencing order, alone, would not suffice. However, that Court did not overrule its holding in Ex parte Eason allowing an implicit adjudication where the totality of the record discloses the trial court’s determination of guilt and a pronouncement of the sentence. See Ex parte Eason, 929 So.2d at 995-96.
Therefore, as in Ex parte Eason, the record here discloses the trial court’s determination of guilt and a pronouncement of sentence, and this case is ripe for appeal.
I.
Hinkle first argues that the circuit court abused its discretion in sentencing her to a total of 137 years in the state penitentiary when the sentencing guidelines recommend a sentence of between 22 to 69 months for each conviction, In support of this argument, Hinkle asserts that her sentence is much longer than other *806 sentences for theft convictions,[2] that her sentence prevents her from paying restitution to the victims, and that her sentence is contrary to the stated goals of the sentencing guidelines.
Here, the record shows that in January 2015 the State filed notice of its intent to seek a departure from the sentencing guidelines. In its motion, the State asserted that the departure was warranted because the following aggravating circumstances were present in Hinkle’s case:
“1. The offenses made the basis of this cause, viz; Theft I and Theft II, involved the taking of money of great monetary value, viz; monies aggregating more than $593,000.
“2. Each of the offenses charged in the indictment returned in the above-captioned was committed while [Hinkle] was on supervised probation from a conviction in the Circuit Court of Madison County, Alabama in case number CC 09-4240.
“3. The amount of money [Hinkle] stole in the aforesaid Madison County case together with incidental items of restitution aggregated more than $160,000.
“4. The victims of the thefts in the instant cause were caused serious financial hardship.
“5. One of the victims in the instant cause was over eighty (80) years of age. Another of the victims is over seventy-five (75) years of age. Still another of the victims was a widow, over the age of sixty-two years, an alien resident and, because of the theft, without means of self support.
“6. [Hinkle’s] modus operandi by which the funds alluded to in the indictment were stolen involved her gaining the trust and confidence of the victims in connection with [Hinkle’s] position as a legal secretary and thereupon breaching that trust and confidence by stealing the victims’ money.
“7; One victim, a widow over the age of sixty-two (62) years suffered a loss of approximately $183,000 as a result of [Hinkle’s] thefts.
“8. One victim, a man over eighty (80) years of age, suffered a loss of $64,000 as a result of [Hinkle’s] theft.
“9. Four victims who were heirs, to an estate being administered by [Hinkle’s] employer, one of whom was over seventy-five (75) years of age, suffered collective losses of approximately $287,000 as a result of [Hinkle’s] thefts.
“10. One victim delivered a cashier’s check in the amount of $10,000 to [Hin-kle] for transmittal to the Internal Revenue Service to satisfy income tax delinquency. [Hinkle] converted the said cashier’s check to her own uses and thereby caused the victim problems with the Internal Revenue Service.
“11. [Hinkle] stole a substantial sum of money from a husband and wife couple and thereafter converted such monies to her own uses rather that transmitting the monies as she agreed to creditors. Said fraudulent conversion resulted in further damage to them creditworthiness.
“12. Prior to the commencement of the larcenous acts averred in the indictment, [Hinkle] stole approximately $57,000 from her lawyer employers, viz: Jack D. Long and Robert E, Long, Jr. in periodic thefts commencing on to-wit: May 20, 2008 and continuing at least through January 10, 2010. Prosecution *807 of these thefts are presumed to be-precluded as being time-barred. The said Jack D, Long is eighty-two (82)- years of age and the said Robert E. Long, Jr. is sixty-six (66) years age. The said lawyers were subjected to severe hardship as a result of [Hinkle’s] thefts.
“13. [Hinkle] procured her employment-'with attorneys, Jack D. Long and Robert E. Long, Jr., by fraudulently withholding her employment history and criminal conviction and by fraudulently misrepresenting that' she had recently located to North Alabama from Illinois and that she had received a law degree from a school in Illinois.”
(C.R. 63-65.)
According to the sentencing guidelines, the following are considered “aggravating factors” that justify an upward departure from the recommended sentence:
“The offense involved a fiduciary relationship, including a domestic relationship, which existed between the defendant and the victim.
“The victim- was particularly vulnerable due to age, infirmity, or reduced physical capacity that was known . or should have been known to the defendant.
“The defendant was incarcerated, on pretrial release, on probation or parole, or serving a community corrections sentence at the .time the crime was committed, or otherwise under sentence of law.
[[Image here]]
“The offense involved an attempted or actual taking or receipt of property of great monetary value or damage causing great monetary loss to the victim(s).
“The offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, involved multiple victims, or involved a single victim victimized more than once.
“The commission of the offense created a substantial risk to human health or safety or a danger to the environment.
[[Image here]]
“The defendant used the identity of another person withotit authorization td commit the crime.
“Any other ‘aggravating factor’ reasonably related to the purposes of sentencing.”
Presumptive and Voluntary Sentencing Standards Manual at 26.
At the sentencing hearing, the State presented an extensive Case as to why Hinkle’s sentence should be' increased. Several of Hinkle’s victims testified.
Jack Long testified that he is currently a retired lawyer and that he practiced bankruptcy law. In April 2008, he placed an advertisement for clerical help for his firm Long & Long. Hinkle applied for the job. In her resumé, he said,, she stated that she was a graduate of Loyola Law School in Chicago. She was hired, he said, based on her resumé and the interview. Hinkle wrote checks to “Jack Long” and deposited those checks in her account. Long stated that Hinkle took approximately $29,713 in that manner but that the statute of limitations had expired on her theft of that money. At the time of the hearing, he said, he was living in a government-subsidized one-bedroom apartment.
Robert Long, Jr., who is no relation to Jack Long, testified that he worked with Jack Long in 2008-2009 and that after Jack Long retired sometime in January 2010 Hinkle stayed at his office. He identified checks that Hinkle had written to “Robert Long,” to Hinkle, and others but deposited into Hinkle’s account or her husband’s business account. He said that as a result of the thefts he had to close his law practice, that he had been suspended from the practice of law, and that he had been *808 sued for negligence by some of Hinkle’s victims for failing to adequately supervise Hinkle. At-the time of the-hearing he was working at the Boys and Girls Club of Morgan and Lawrence Counties making $8.50 per hour. Long also testified that he had prepared wills for two elderly sisters who died within days of each other. The total estate was valued at approximately $1.2 million. He said one of the, heirs telephoned him complaining that she had not gotten her money even though some of the heirs had gotten .their money. This heir complained that Hinkle had been giving her the runaround. Apparently, Long testified, there was no money to disburse the $285,000 that was .due to several of the heirs. Long also testified that a relative, Hal Moore, brought a check to his office so that he could purchase a piece of real estate for cash; however, when the time came to close on the property,' there was no money. Hal Moore testified that the check he brought' to Long’s office was payable to Robert' Long in the amount of $64,000.
Louise Harris testified that she was a friend of Hinkle’s and trusted her completely and that she had met Hinkle when Harris’s husband became the minister at Somerville Church of Christ. She testified' that Hinkle gave her advice when her husband was terminally ill. Harris said that Hinkle told her that the wills that Harris and her husband had executed in South Africa were not legal in Alabama and that they needed to execute new wills. Harris said that Hinkle prepared new wills and living wills for the-Harrises and that they both signed those wills. When her husband died in July 2011, she said, she received-$250,000 in insurance money. After this, Harris said; Hinkle told her that her husband’s estate would have to be probated and the insurance money needed to be put into a trust account pending probate. Harris said that she gave Hinkle a total of $183,000 to put into the trust account. Harris further testified that at the time of the hearing her house had been foreclosed, that she was totally financially dependent on her children, and that shé had had to stop taking her heart medication because she could not afford to pay for it.
Angela Aldridge, a special agent.with the Alabama Department of Revenue, testified that she was assigned to investigate Hinkle’s case. She examined various bank accounts related to the' case and determined that Hinkle had taken the following amounts from Robert Long’s accounts: $88,000 in 2010; $99,000 in 2012; $120,000 in 2012; and $160,000 in- 2013. Also, she said, her investigation i*evealed that Hinkle had previously filed for bankruptcy five times, that Hinkle had income-tax liens in the amount of $40,000 against her, and that Hinkle had not filed, an.Alabama income-tax return until 2015.
.The circuit court when imposing Hin-kle’s sentence stated:
“Because this sentence' is hot imposed under the sentencing standards, the following consideration and enhancements have been applied: the Court has consid.ered [Hinkle’s] one prior felony conviction, the amount of money stolen, , the harm done to a number of .victims, the fact that [Hinkle] was on supervised probation at the time of the aforesaid thefts, the fact that two victims have had their law practices adversely affected (one of whom has been disbarred) as a result of [Hinkle’s] thefts from clients, the fact that elderly victims were either left dependent on public assistance or family support and other matters set out in the State’s motion for a departure from the sentencing guidelines.”
(C.R. 195.)
In Hall v. State, [Ms. CR-13-0785, March 18, 2016] — So. 3d —, — *809 (Ala.Crim.App.2016), we addressed a circuit court’s departure from the sentencing guidelines after Hall was convicted of distributing a controlled substance and the jury had found that the sale occurred within three miles of a school and a housing project. This Court stated:
“In Hyde v. State, 185 So.3d 501 (Ala.Crim.App.2015), this Court stated:
“ ‘Under the presumptive standards, circuit courts are given “significant discretion in arriving at sentencing decisions.” Presumptive and Voluntary Sentencing Standards Manual 14 (emphasis added). That “significant discretion” includes a circuit court’s decision to depart from either the durational or dispositional recommendation, or both. The Presumptive and Voluntary Sentencing Standards Manual, however, explains that a durational or dispositional departure “should be rare” and occur only “in exceptional cases.” Presumptive and Voluntary' Sentencing Standards Manual 24. Before a circuit court chooses to depart from a dispo-sitional or durational recommendation under the presumptive sentencing standards, however, the following procedures must be followed:
‘“ “3. Consideration of Aggravating and Mitigating Factors—The Court must consider all aggravating and/or mitigating factors proven for a sentencing event, but the decision to depart from the presumptive sentence recommendation is in the discretion of the court. U < U
[[Image here]]
“■‘“4. Burden of ■ Proof—-Aggravating Factors—The . prosecutor bears the burden of proving beyond a reasonable doubt that an aggravating factor exists. The defendant is entitled to a jury trial on the existence of any aggravating factor, un-Jess the aggravating factor is admitted by the defendant or both the defendant and the prosecutor waive a jury determination and request thq judge alone to decide. It is within the discretion of the trial court whether to bifurcate the trial and sentencing phase of a covered case.

ti 6(t

[[Image here]]
“ ‘ “6. Notice—Aggravation—The prosecutor shall give the defendant notice of .aggravating factors no less than seven (7) days ■ before trial. Once-given, notice is deemed sufficient for any future trial settings. For good cause shown, notice may be given at any tiine with the consent of the trial court, provided the defendant is given an opportunity to research and rebut, the aggravating factor. Notice can be waived.
[[Image here]]
“1 “8. Stating Reasons for Departure—The aggravating and/or mitigating factors found as reasons for any departure must be stated in the written sentencing order, even if the departure sentence is the result of a plea agreement and the parties have agreed to the existence of the aggravating and/or mitigating factors.”
“ ‘Presumptive and- Voluntary Sentencing Standards Manual 24-25 (emphasis added).’
“Hyde, 185 So. 3d at 512. Further, ‘when reviewing a circuit court’s decision to depart from either a dispositional or dura-tional recommendation under the presumptive sentencing standards, this Court will , apply an abuse-of-discretion standard of review.’ Hyde,, 185 So. 3d at 508, ‘ “A trial court abuses its discretion only when *810 its decision is based on an erroneous conclusion of law or where the record contains no evidence on which it rationally could have based its decision.” ’ McCain v. State, 38 So.3d 642, 647 (Ala.Crim.App.2009) (quoting Holden v. State, 820 So.2d 158, 160 (Ala.Crim.App.2001)).”
Hall, — So. 3d at —. In conclusion, in affirming the departure from the sentencing standards, the Hall Court stated:
“There is nothing in the record to indicate that the trial court’s decision to depart from the presumptive sentencing standards when it sentenced Hall was based on an erroneous conclusion of law or that the record contains no evidence upon' which the court rationally could have based its decision. Likewise, there is nothing in the record to indicate that the trial court’s departure in Hall’s case violated- the general admonition in the Standards Manual that ‘[departure sentences should be- rare.’ Accordingly, Hall -has not demonstrated that the trial court abused its discretion in this case.”
— So. 3d at —.
After reviewing the record, we hold that the circuit court did not abuse its considerable discretion in departing from the sentencing guidelines and sentencing Hinkle to 10 years’ imprisonment for 11 of her theft convictions and to 3 years’ imprisonment for 9 of her theft convictions. There is no evidence indicating that the departure was “based on an erroneous conclusion of law.” Nor does the record contain any evidence that, the departure “violated the general admonition” that a departure should be rare. See Hall, supra. The circuit court did not abuse its considerable discretion in sentencing Hinkle, and she is due no relief.
II.
Hinkle next argues that the circuit court failed to state all the reasons for its departure because, she argues, the court' stated in the sentencing order that it had considered other factors set - out in the State’s motion to depart from the sentencing guidelines.
As stated above, the circuit court’s order reads:
“Because this sentence is not imposed under -the sentencing standards, the following consideration and enhancements have been applied: the Court has considered [Hinkle’s] one prior felony conviction, the amount of money stolen, the harm done to a number of victims, the fact that [Hinkle] was on supervised probation at the time of the aforesaid thefts, the fact that two victims have had their law practices adversely affected (one of whom has been disbarred) as a result of [Hinkle’s] thefts from clients, the fact that elderly victims were either left dependent on public assistance or family support and other matters set out in the State’s motion for a departure from the sentencing guidelines.”
(C.R. 195.) (Emphasis added.)
The State first asserts that this issue is not- properly preserved for appellate review because, it argues, Hinkle did not object to deficiencies in the court’s findings on the aggravating factors. We agree with the State that this issue was not preserved. See Ex parte Parks, 923 So.2d 330 (Ala.2005). Hinkle filed an extensive motion objecting to the circuit court’s sentencing order. (C. 204-07.) However, this objection was not included in that motion.
Moreover, the circuit court made findings on the aggravating factors it considered in increasing Hinkle’s- sentence. Those findings are supported by the record. The circuit court’s findings appear to *811 be a synopsis of the factors set out by the State in its motion for a sentencing departure. Although the circuit court did reference the State’s motion, a motion contained in the record, this reference did not invalidate the court’s findings or result in a violation of the sentencing guidelines. The aggravating factors set out by the circuit court were more than sufficient to warrant an increase in Hinkle’s sentences.
For the foregoing reasons, we affirm Hinkle’s convictions and the sentences imposed by the circuit court.
AFFIRMED.
Windom, P.J., and Kellum, Burke, and Joiner, JJ,, concur.

. The circuit court filed an' amended sentencing order on April 27, 2016, to correct the previously issued order. Although this order was issued after the time had lapsed for the continuance on the postjudgment motion, this order was issued pursuant to Rule 29, Ala. R. Crim. P., to correct the written sentence to comply with the oral pronouncement of sentence. See Sims v. State, 741 So.2d 1117 (Ala.Crim.App.1999). An order issued pursuant to Rule 29, Ala. R. Crim. P., may be issued at any time. As Rule 29, Ala. R, Crim. P., states: “Clerical mistakes in judgments, orders, or other parts of the record, and errors arising from oversight or omission may be corrected by the court at anytime of its own initiative or on the motion of any party and after such notice, if any, as the court orders.”

. Hinkle cites specific cases in support of this argument, cases that are not contained in the record on appeal. Assertions in brief, not supported by the record, are not evidence and cannot be considered by this Court. See Ex parte Ruggs, 10 So,3d 7 (Ala.2008),